## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## BLUEFIELD DIVISION

| | |
|---|---|
| **BETH COPSON, Administratrix of the Estate of KYLE ANDREW COPSON, deceased,** )<br><br>)<br><br>)<br><br>) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Civil Action No.** ___1:19-cv-00127___ |
| ) | |
| **PATRICK M. HEPHNER, individually as a member of the West Virginia State Police, and JAMES C. LONG, individually as a member of the West Virginia State Police,** )<br>)<br>)<br>)<br>)<br>)<br>)<br>) | |
| ) | |
| **Defendants.** ) | |

## COMPLAINT

**COMES NOW**, Plaintiff Beth Copson, on behalf of the Estate of Kyle Andrew Copson,

by counsel, and for her Complaint states and alleges as follows:

## JURY DEMAND

1.     The Plaintiff hereby demands a trial by jury.

## JURISDICTION AND VENUE

2.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and 1343

and under this Court's authority to decide pendent state law claims.

3.     Plaintiff files this Complaint, pursuant to 42 U.S.C. § 1983, alleging violations of

the decedent's constitutional rights.  Specifically, Plaintiff alleges that the decedent's rights under

the Fourth Amendment to the United States Constitution and under Article III, Sections 6 and 10

of the West Virginia Constitution were violated by Defendants when they used excessive and

deadly force during a shooting that took place on February 22, 2017 in Mercer County, West Virginia, killing the decedent, Kyle Andrew Copson.

4.    Venue is proper because one or more of the above-named Defendants reside within the Southern District of West Virginia, Bluefield Division, and the incident giving rise to this Complaint occurred in the Southern District of West Virginia, Bluefield Division.

## PARTIES

5.    Plaintiff Beth Copson (hereinafter "Plaintiff") was at all times relevant hereto a resident of Kanawha County, West Virginia.

6.    Plaintiff was duly appointed the Administratrix of the Estate of Kyle Andrew Copson in the Circuit Court of Kanawha County, West Virginia on July 10, 2017.

7.    Defendant Patrick M. Hephner (hereinafter "Trooper Hephner") was at all times relevant hereto a trooper with the West Virginia State Police and was at all times relevant hereto acting under color of law and within the scope of his employment.  Trooper Hephner who, upon information and belief, resides in York County, Virginia, is sued only in his individual capacity.

8.    Defendant James C. Long (hereinafter "Trooper Long") was at all times relevant hereto a trooper with the West Virginia State Police and was at all times relevant hereto acting under color of law and within the scope of his employment.  Trooper Long who, upon information and belief, resides in Mercer County, West Virginia, is sued only in his individual capacity.

9.    This Complaint was filed after Plaintiff complied with W. Va. Code § 55-17-3 by sending a certified letter to Attorney General Patrick Morrisey and West Virginia State Police Superintendent, Colonel J. L. Cahill on January 11, 2019.

10.    Pursuant to W. Va. Code § 55-17-3, a copy of this Complaint was mailed to Attorney General Patrick Morrisey after it was filed.

11.     Defendants are sued up to the limits of the insurance policy which provides liability coverage for their actions and omissions.

## FACTS

12.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 11 as though fully set forth herein.

13.     At the time of his death, Kyle Andrew Copson (hereinafter "Mr. Copson") was a twenty-six (26) year old mentally ill man.

14.     Mr. Copson's various mental illnesses caused him to suffer episodes of mania and/or paranoia.

15.     Mr. Copson has no history of violence.

16.     At approximately 3:45 p.m. on February 22, 2017, Trooper Hephner and Trooper Long responded to a call regarding a young male (Mr. Copson) behaving strangely and carrying a knife in or around the area of Meadowfield Lane in Princeton, West Virginia.

17.     Upon arrival, Troopers Hephner and Long found Mr. Copson talking to himself and behaving erratically, while holding a kitchen knife.

18.     Even though Mr. Copson did not threaten bodily harm to Trooper Hephner, Trooper Long, or any members of the general public, Defendants immediately drew their weapons and pursued Mr. Copson on foot as he tried to walk away from them.

19.     During this pursuit, Trooper Hephner, with his weapon drawn, interacted verbally with Mr. Copson.  Meanwhile, Trooper Long attempted to "flank" Mr. Copson, all the while repeatedly "drawing down" or pointing his weapon at him.

20.      Trooper Hephner and Trooper Long pursued Mr. Copson on foot until he was eventually cornered in a nearby Hardee's parking lot.

21.     Trooper Hephner and Trooper Long closed in on Mr. Copson until he had nowhere to go.

22.     There, while cornered in the Hardee's parking lot, Trooper Long and Trooper Hephner shot and killed Mr. Copson.

23.     Trooper Long, who was acting as "cover" for Trooper Hephner, fired two (2) shots after Mr. Copson moved "towards" Trooper Hephner.

24.     Trooper Hephner then immediately fired a single shot at Mr. Copson.

25.     All three of the shots fired stuck Mr. Copson in the torso/abdomen, killing him.

26.     Upon information and belief, neither Trooper Long nor Trooper Hephner warned Plaintiff that they were going to shoot or gave Mr. Copson a verbal command to do/not do something, otherwise they will shoot.

27.     Upon information and belief, neither Trooper Long nor Trooper Hephner attempted to deescalate or complete a wellness check on Mr. Copson, despite objective signs that Mr. Copson may have been an emotionally disturbed person or experiencing a mental health crisis.

28.     Upon information and belief, Mr. Copson did not pose an objectively reasonable threat to the safety of Trooper Hephner or Trooper Long when they shot and killed him.

29.     Despite the West Virginia State Police's strained and biased efforts to depict otherwise, Mr. Copson was not close enough to Trooper Hephner or Trooper Long to pose an objectively reasonable threat of imminent bodily harm from someone holding a knife.

30.     After the shooting, eyewitness Rady Lurie (hereinafter "Mr. Lurie") gave a statement to the West Virginia State Police.  According to Mr. Lurie, Mr. Copson was "fifteen feet away" from the Defendants when they shot and killed him.

31.     Upon information and belief, Mr. Copson did not pose an objectively reasonable threat to the safety of members of the general public when he was shot and killed by Defendants.

32.     Despite the West Virginia State Police's strained and biased efforts to depict otherwise, the area where this incident occurred was not populated or crowded with citizens.

33.     After the shooting, Trooper Long gave a statement to the West Virginia State Police.  According to Trooper Long, "there was nobody else in that area" when Defendants shot and killed Mr. Copson.

34.     Upon information and belief, neither Trooper Long nor Trooper Hephner attempted to use any non-lethal force or non-lethal weapons (*e.g.*, Taser, peppery spray, etc.) to deescalate the situation.

35.     Upon information and belief, Mr. Copson's "move" toward Trooper Hephner, which prompted Trooper Long's use of deadly force, was not a move to attack or otherwise harm Trooper Hephner.

36.     Upon information and belief, Mr. Copson, who was cornered and being surrounded by the armed Defendants, was attempting to run away to the right of Trooper Hephner when Trooper Long opened fire.

37.     As such, upon information and belief, Trooper Hephner and Trooper Long discharged their weapons prematurely, without proper warning, and without reasonable justification, thereby killing Mr. Copson.

38.     Eyewitness Mr. Lurie captured the shooting of Mr. Copson on a video taken with his cell phone.

39.     Following the incident, a member of the West Virginia State Police confiscated Mr. Lurie's cell phone.  According to Mr. Lurie, when his cell phone was returned, the video had been deleted.

40.     During the course of its "investigation" into the shooting death of Mr. Copson, the West Virginia State Police took great pains to portray Mr. Copson has being high on drugs when the shooting occurred, arguably to justify Defendants' killing of Mr. Copson.

41.     Upon information and belief, the toxicology screen performed during Mr. Copson's autopsy came back negative for drugs or alcohol.

### COUNT I – EXCESSIVE FORCE UNDER 42 U.S.C. §1983

42.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 41 as though fully set forth herein.

43.     Defendants, while acting under color of law and within the scope of their employment, violated Mr. Copson's constitutional rights by using excessive and deadly force, as described hereinabove, during the shooting of Mr. Copson on February 22, 2017, resulting in his death.

44.     At all material times, Defendants were acting as West Virginia State Police Troopers.

45.     The actions of Defendants violated the constitutional rights guaranteed to Mr. Copson under the Fourth Amendment to the United States Constitution.

46.     The deadly actions of Defendants were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

47.     At all material times, Defendants did not have an objectively reasonable fear of imminent bodily harm when they shot Mr. Copson nor an objectively reasonable belief that any other person was in danger of imminent bodily harm from Mr. Copson.

48.     Defendants' deadly acts were unlawful and unjustified, as they used their weapons prematurely, without warning, and without reasonable justification, thereby killing Mr. Copson.

49.     As a direct and proximate result of Defendants' unreasonable, unconstitutional, and deadly actions, Mr. Copson suffered violations of his constitutional rights, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

50.     In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

51.     The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Mr. Copson, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

## COUNT II – STATE CONSTITUTIONAL VIOLATIONS

52.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 51 as though fully set forth herein.

53.     Defendants, while acting under color of law and within the scope of their employment, violated Mr. Copson's constitutional rights by using excessive and deadly force, as described hereinabove, during the shooting of Mr. Copson on February 22, 2017, resulting in his death.

54.     Count II alleges a constitutional tort action under the West Virginia Constitution, pursuant to the common law of West Virginia, and specifically is not filed pursuant to 42 U.S.C. § 1983 or any other related federal statute.

55.     The actions of Defendants violated the constitutional rights guaranteed to Mr. Copson under Article III, Sections 6 and 10 of the West Virginia Constitution.

56.     The actions of Defendants also violated the constitutional rights guaranteed to Mr. Copson under the Fourth Amendment to the United States Constitution.

57.     The deadly actions of Defendants were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

58.     At all material times, Defendants did not have an objectively reasonable fear of imminent bodily harm when they shot Mr. Copson nor an objectively reasonable belief that any other person was in danger of imminent bodily harm from Mr. Copson.

59.     Defendants' deadly acts were unlawful and unjustified, as they used their weapons prematurely, without warning, and without reasonable justification, thereby killing Mr. Copson.

60.     As a direct and proximate result of Defendants' unreasonable, unconstitutional, and deadly actions, Mr. Copson suffered violations of his constitutional rights, conscious pain and suffering, and an untimely death.  Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

61.     The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Mr. Copson, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

**COUNT III – BATTERY**

62.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 61 as though fully set forth herein.

63.     Defendants committed battery upon Mr. Copson, proximately causing his death.

64.     As a direct and proximate result of Defendants' unreasonable, unconstitutional, and deadly shooting, Mr. Copson suffered conscious pain and suffering and an untimely death. Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

65.     The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Mr. Copson, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

**COUNT IV – NEGLIGENCE**

66.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 65 as though fully set forth herein.

67.     At all times relevant hereto, Defendants owed Mr. Copson a duty of care.

68.     Defendants, while acting within the scope of their employment, breached their duty of care to Mr. Copson.

69.     As a direct and proximate result of Defendants' breach of their duty of care, Mr. Copson was shot and killed.

70.     As a direct and proximate result of Defendants' unreasonable, unconstitutional, and deadly shooting, Mr. Copson suffered conscious pain and suffering and an untimely death.

Plaintiff will seek to recover all damages permitted under the law, including but not limited to, all damages recoverable under the West Virginia wrongful death statute, W. Va. Code § 55-7-6.

71.     The actions of Defendants were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Mr. Copson, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

**WHEREFORE**, Plaintiff demands judgment in his favor against Defendants in an amount to be proven at trial, together with pre-judgment and post-judgment interest; for all damages recoverable under law; for punitive damages; for his attorney's fees, attorneys' fees under 42 U.S.C. § 1988, expenses, and costs of litigation; and for such other and further relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**


**BETH COPSON, on behalf of the
ESTATE OF KYLE ANDREW COPSON**

**By Counsel**


*/s/ Russell A. Williams*
WV State Bar No. 12710
Katz, Kantor, Stonestreet & Buckner, PLLC
112 Capitol Street, Suite 100
Charleston, WV  25301
(304) 431-4053
rwilliams@kksblaw.com